UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John Locapo

    v.                                  Civil No. 08-cv-414-JL
                                        Opinion No. 2009 DNH 057
Brian Colsia *et al.*

**O R D E R**

Plaintiff John Locapo, proceeding pro se, has sued MAK Investments, LLC; its managing member, Brian Colsia; and Starter Title Services, a title company that allegedly assisted in placing a mortgage on Locapo's residence to finance his purchase of a different property from MAK.[1]  Locapo claims that, in the course of these transactions, the defendants made misrepresentations, engaged in unfair or deceptive acts and practices, and committed other wrongs.  The defendants have filed motions to dismiss Locapo's complaint, see Fed. R. Civ. P. 12(b)(6), arguing that these claims did not survive his bankruptcy filing in September 2007.

This court has diversity jurisdiction over this matter, since Locapo is a citizen of Massachusetts and the defendants (or, in the case of MAK, its members) are citizens of New

---

[1] While Locapo commenced this action in a pro se capacity, he retained counsel after the defendants filed their motions to dismiss--but counsel sought, and was granted, leave to withdraw three months later, returning Locapo to pro se status.

Hampshire.  See 28 U.S.C. § 1332.  After oral argument, and for the foregoing reasons, the court grants the defendants' motions.

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court proceeds "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citations and footnote omitted).  Furthermore, Locapo's pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (applying Twombly standard to pro se complaint).  The court has also taken judicial notice of the records of Locapo's bankruptcy proceeding.  See Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 16 (1st Cir. 2003).

The complaint alleges, in relevant part, that Colsia orally agreed to sell Locapo an apartment building in Milford, New Hampshire, and to assist him in securing the financing for the purchase.  With Colsia's help, Locapo obtained a mortgage on his residence, intending to use the proceeds to pay roughly half the cost of the apartment building.[2]  Locapo claims that Starter,

---

[2] As discussed infra at note 5, the parties' written agreement indicates that the deal had a significantly different

2

which served as the title company for the transaction, nevertheless acted wrongfully in disbursing the proceeds to Colsia.  The transaction closed on April 26, 2006.

Locapo alleges that, to pay the balance of the purchase price, he granted MAK a second mortgage on his residence and provided landscaping services and materials on another property owned by Colsia and MAK.[3]  Locapo also claims to have spent money making various improvements to the apartment building itself.  In July 2007, however, Colsia allegedly told Locapo that Colsia would not be able to assist Locapo in getting more financing and, furthermore, that Locapo would lose both his initial investment and the value of the improvements as a result.

Locapo, represented by counsel, subsequently filed a voluntary petition for bankruptcy protection, on September 17, 2007.  In re Locapo, No. 07-43444 (Bkrtcy. D. Mass. Sept. 17, 2007).  Under Rule 1007 of the Federal Rules of Bankruptcy

---

structure, but the court has accepted Locapo's characterization of it for the purpose of ruling on the motions to dismiss.

[3]A mortgage secures a debt, rather than paying the debt in the manner Locapo alleges.  Colsia and MAK represent (in their objection to Locapo's motion for a preliminary injunction, which has been denied) that he gave them a promissory note which was secured by the mortgage.  That detail has no bearing on the motions to dismiss, however.

Procedure, Locapo was required to file, together with the petition, the schedule of assets and liabilities required by 11 U.S.C. § 521(a)(1)(B)(ii).  Locapo did so, using the official bankruptcy court form.  But the filing made no reference to any claim against the defendants or, indeed, any interest in the apartment building at all; the line on the form for "contingent and unliquidated claims of every nature" was checked "NONE."

Locapo alleges in his complaint that he did not realize he had any claim against Colsia until October 2007.[4]  But after that point, on November 28, 2007, Locapo successfully moved the bankruptcy court for leave to amend the schedule to add a "Possible Workmen's Compensation Settlement in an unknown amount," listing that asset in the space for "contingent and unliquidated claims."  Locapo's proposed amended schedule, like his original one, made no reference to any claim against the defendants.  Eventually, on April 15, 2008, the bankruptcy trustee reported that the estate had "no nonexempt property available for distribution to creditors."  This resulted in the bankruptcy court's discharging Locapo and closing the case, which

---

[4]Locapo also represents in his objection to the motions to dismiss that he told his bankruptcy lawyer about the alleged agreement with Colsia but that "since there had been no transfer of property" the lawyer determined that the agreement was not an asset that needed to be listed on the schedule.

occurred on May 22, 2008. Some months later, on October 7, 2008, Locapo commenced this action.

Section 521 of the bankruptcy code, as previously mentioned, requires the debtor to file a schedule of assets and liabilities. See 11 U.S.C. § 521(a)(1)(B)(ii). Because "[t]he basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh," the bankruptcy system cannot function fairly and effectively unless the debtor scrupulously complies with this requirement. Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1992). So a debtor cannot omit a cause of action from his schedule of assets, leaving his creditors in the dark as to a potential source of payment for their claims, then bring the cause of action on his own once those claims have been compromised or released in the bankruptcy, keeping any recovery for himself. See id.

Courts sometimes enforce this prohibition through the doctrine of judicial estoppel, which generally prevents a party from prevailing on one position in a legal proceeding, then taking an inconsistent position in a subsequent case. See id.; see also, e.g., Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir. 2006); Browning Mfg. v. Mims (In re Coastal Plains,

Inc.), 179 F.3d 197, 208 (5th Cir. 1999); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988). But others, including the court of appeals for this circuit, have relied on the operation of § 521 in conjunction with another provision of the bankruptcy code, § 554, which provides for abandonment of the property of the bankruptcy estate. Jeffrey v. Desmond, 70 F.3d 183, 186 (1st Cir. 1995); see also, e.g., Cusano v. Klein, 264 F.3d 936, 945-46 (9th Cir. 2001); Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995); Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 525-26 (8th Cir. 1991). The defendants' motions to dismiss invoke this second theory, so the court need not consider judicial estoppel here.[5]

Section 554 provides, in relevant part, that "any property scheduled under [§ 521(1)] and not otherwise administered is abandoned to the debtor," 11 U.S.C. § 554(c), but "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate," id. § 554(d). Because property cannot be abandoned to the debtor unless it has been scheduled, per subsection (c), property that is not scheduled is not abandoned, but remains in the estate, per subsection (d). See, e.g., Cusano, 264 F.3d at 945-46. The

---

[5]The defendants' motions do, however, expressly reserve their right to assert a judicial estoppel defense.

6

upshot is that, once a bankruptcy case closes through administration of the estate, the debtor loses his rights in a cause of action he had at the time he sought bankruptcy protection but nevertheless failed to list on his schedule.  See, e.g., Jeffrey, 70 F.3d at 186.

    That is the fate of Locapo's claims against the defendants here.  While "generally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy," Cusano, 264 F.3d at 947, the causes of action here accrued before Locapo filed his bankruptcy petition.

    Indeed, Locapo states that Colsia announced, in July 2007, that he would not help Locapo in getting further financing for his purchase of the apartment building; Colsia's alleged failure to provide this assistance provides part of the basis for Locapo's claims against him here.  At the same time, according to Locapo, Colsia also allegedly said that Locapo would lose his initial investment in the property, i.e., the money he obtained by mortgaging his residence; Colsia's alleged misappropriation of those funds serves as the basis for a number of Locapo's other claims against him.[6]  Locapo's claims against Starter Title,

---

[6] Some of Locapo's claims against Colsia arise out of his alleged misrepresentations that he or MAK was the owner of the apartment building, when in fact it was owned by another entity, 40 Nashua Street, LLC.  The written agreement between Locapo and

7

which charge that it wrongfully directed those funds to Colsia, likewise arose at that point, if not sooner (Locapo's complaint suggests that he knew, when that mortgage closed in April 2006, that its proceeds were destined for Colsia, and Locapo did not dispute this point when Starter Title made it at oral argument).

Locapo's objection to the motions to dismiss does not question that the claims he asserts here arose prior to his bankruptcy filing. While his complaint states that he did not "realize" that Colsia had breached his claimed agreement to help procure financing for the purchase until October 2007 (the month after the bankruptcy filing), that conclusory statement is contradicted by his factual allegations--which state, again, that Colsia announced in July 2007 that he would not honor that aspect

---

MAK, however, explicitly states that MAK was assigning "its right and interest in a certain lease" for the building--which included an option to purchase--rather than the building itself, and acknowledges Locapo's obligation, as assignee, to continue paying rent. The court may take judicial notice of that document, see Perry v. New Eng. Bus. Serv., Inc., 347 F.3d 343, 345 n.2 (1st Cir. 2003), which leaves no doubt that Locapo knew, by the time he signed it at the latest, that neither Colsia nor MAK in fact owned the building, regardless of what they may have allegedly said beforehand. Locapo makes no allegation or argument to the contrary. Incidentally, the agreement also indicates that what Locapo calls his "initial investment" (including the proceeds from the first mortgage, the note secured by the second mortgage, and the landscaping work) was the consideration for acquiring the option to purchase from the defendants; the additional financing was needed to pay the owner of the building when the option was exercised.

of the agreement--and is therefore disregarded in ruling on the motions to dismiss.[7]  See Bell Atl., 127 S. Ct. at 1965.

Locapo does argue in his objection that he told his bankruptcy attorney about the claimed agreement with Colsia, see note 4, supra, but simply telling someone about a claim--which is not even in fact what Locapo says he did--is not equivalent to listing it on the debtor's schedule of assets.  In Jeffrey, in fact, the court of appeals ruled that the debtors had lost their claim by failing to list it on their asset schedule, despite their allegation that they had discussed it with the trustee at the creditors' meeting before the case closed, reasoning that the debtors' failure to list the claim on their schedule was what mattered.  70 F.3d at 186; see also Vreugdenhill, 950 F.2d at 526 ("It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to section 521(1).").

As the court of appeals held in Jeffrey, "[t]he law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules, and that in order for property to be abandoned by operation of law pursuant to 11

---

[7] The same is true of the complaint's assertion that Locapo did not learn about Colsia's alleged misappropriation of the initial investment in the property until May 2008.

U.S.C. § 554(c), the debtor must formally schedule the property pursuant to 11 U.S.C. § 521(1) before the close of the case." 70 F.3d at 186. Because Locapo did not discharge that burden in his bankruptcy proceeding, his claims against the defendants remained in the estate under § 554(d), rather than being returned to him under § 554(c). He therefore can no longer maintain these claims against the defendants. See id. To allow him to do would be tantamount to letting him hide the claim (and any potential recovery) from his creditors, who were never informed of its existence during the bankruptcy proceeding--and walked away empty-handed. See Payless Wholesale Distribs., 989 F.2d at 571.

There is a potential solution to this problem, however. Locapo may file a motion in the bankruptcy court, under Rule 5010 of the Federal Rules of Bankruptcy Procedure, to reopen his bankruptcy case to schedule his claims against the defendants under 11 U.S.C. § 350(b). See Brooks v. Beatty, 25 F.3d 1037 (table), 1994 WL 224160, at *3 (1st Cir. May 27, 1994) (unpublished disposition). If he is allowed to do so, the trustee will decide whether to press the claims or otherwise dispose of them for the benefit of Locapo's creditors, or to abandon the claims to him to pursue on his own. See id. Whether to reopen the case, and what to do about the claims should the case be reopened, are decisions left to the discretion of the

bankruptcy court and the trustee, respectively.  This court expresses no opinion on those issues or the merits of the claims.

For the foregoing reasons, the defendants' motions to dismiss[8] are GRANTED.  Locapo's claims are dismissed without prejudice to his attempting to reopen his bankruptcy proceedings.  The clerk of this court shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  April 22, 2009

cc:   John Locapo, pro se
      Joseph A. Foster, Esq.
      Kenneth D. Murphy, Esq.

---

[8]Documents no. 8 and 10.